The opinion was delivered at the March term, 1850.
Fletcher, J.
The only question in this case is, whether the notice given by the demandant to the tenant, was suff. *102 cient to determine the lease, and whether the lease was accordingly terminated on the 6th of January, 1848.
There seems to be no valid objection to the notice in respect to form; but the point is, whether or not the landlord could terminate the lease on the 6th of January, or at any time other than the end of a year. A notice to quit is required by law, or by local custom, or by express stipulation between tne parties. In the absence of express stipulation or local custom, it is a "general principle of the English law, that if a tenant hold from year to year, notice must be given ending with the year of the tenancy; if the hiring be a quarterly, a monthly, or a weekly hiring, the notice must be a notice to quit at the expiration of the current quarter, month, or week ; and if it breaks into the middle of the quarter, month, or week, it is not a good notice to quit. Archb. L. & T. 86; Addison, Con. 667; Kemp v. Derrett, 3 Camp. 510; Doe v. Green, 9 Ad. & El. 658; 4 Bac. Ab. Leases, &c. L. 3 & 36; Doe v. Dobell, 1 Ad. & El. N. S. 806; Brown v. Burtinshaw, 7 D. & R. 603.
In Woodfall’s L. & T. 163, it is said that the distinction between a tenancy from year to year, and a tenancy for a term of years, is more in words than in substance. A notice to quit has reference, in all cases, to the letting. Before the revised statutes it was held, that a tenant at will was entitled to reasonable notice before he was obliged to quit; and that such reasonable notice must always be sufficient to allow the tenant to take away the emblements, family furniture, and other property. Minot’s Dig. 432. The present is a case of express stipulation between the parties. There is by the agreement to be six months’ notice. But is it to be six months ending at any time, or is the notice referable to the expiration of the year ? This is left wholly open and undecided by the contract itself. The case of Doe v. Donovan, 1 Taunt. 555, has a very strong resemblance to the present case. That was a tenancy from year to year, with an agreement to quit at a quarter’s notice. At the trial before Mansfield, C. J., he thought it meant a quarter ending at any time ; but on a rule nisi to set aside the verdict, he himself came to the conclusion. *103 and it was adjudged, that the quarter’s notice must expire at the end of the year. Mansfield, C. J., said: “ The evidence given was of a quarter’s notice, leaving it entirely to the law to ascertain the meaning of the expression, and as there is no satisfactory explanation that this contract for a quarter’s warning had any other meaning than that which the general law gives it, we think it better to hold (and certainly it is the most rational interpretation) that the notice to quit was intended to expire at the end of the year.” Chambre, J., said, that “ the meaning of the quarter’s notice depended upon the whole contract.” So, in the present case, no time being fixed at which the six months’ notice should expire, the court must ascertain what was the meaning of the parties by the six months’ notice, by a reasonable construction of the whole contract. The time commenced on the first of June, 1844, at an annual rent of $1400 a year, to be paid by boarding the demandant twenty-seven weeks in each year, between October and May. The conditions were to be performed by both parties after notice given until the expiration of the six months. The tenant kept a boarding house, and her profits were mainly made between October and May, and the more usual time of hiring houses of this description was in the fall or spring. The demandant gave notice to the tenant, on the 6th of July, 1847, to quit on the 6th of January, 1848. If this was a good notice, then the tenant would be obliged to keep up her establishment until January the 6th, to board the demandant and his family, and then quit in the midst of the season for making her profits, when she would not be likely to be able to obtain another house, or to obtain boarders, and thus be deprived of her emblements or profits, contrary to the general principles of law. When there is an annual rent payable annually in money, it cannot be divided by the landlord, and the tenant made to pay for a part of the year, as the payment is for the whole year, and not for any part. So, here, there is an annual rent payable annually in boarding, and the landlord, by boarding with the tenant from October 14th, 1847, to January 6th, 1848, received so much of the annual rent for the use of the premises for the year. The boarding was not for any par *104 ticular portion of the year, but for the whole year; and the landlord, having received part payment for the whole year, could not rightfully divide the rent, and deprive the tenant of the occupancy for the year. The unreasonableness of putting a construction upon this lease, which would allow either party to terminate it at any time, other than the end of the year, is strikingly manifest by referring to the advantage which the tenant might gain upon such construction. In that case, the tenant might gi-ve a notice so as to have the six months expire before the boarding the demandant and his family in the faL commenced, and thus get the use of the premises for four or five months without paying any rent at all. So that if either party were allowed to give a notice to end the term at a time other than the end of a year, injury and injustice might be done to the other party. But if a notice is given so as to have the six months expire at the end of a year, exact justice would be done to both parties, and their respective interests best consulted. Looking at the whole case, the court are of opinion, that a reasonable construction of the terms of the lease requires that the notice to quit should be so given as to have the six months expire at the end of a year. The notice given by the demandant not having been so given was not a good notice. See Comyn, L. & T. 269.